Gail L. Gottehrer (GG-5187)
Jonathan A. Harris (*pro hac vice*)
Thomas K. Hedemann (*pro hac vice*)
**Axinn Veltrop & Harkrider LLP**
90 State House Square
Hartford, CT 06103-3702
Telephone: (860) 275-8100
Facsimile: (860) 275-8101

William L. King III (*pro hac vice*)
**King & Partners, PLC**
170 College Avenue
Suite 230
Holland, MI 49423
Telephone: (616) 355-0400
Facsimile: (616) 355-9862

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IVY-DRY, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ZANFEL LABORATORIES, INC. and THE WILLIAM M. YARBROUGH FOUNDATION,<br><br>Defendants. | Civil Action No. 2:08-cv-4942 (WHW) |

## DEFENDANTS' REPLY MEMORANDUM IN FURTHER
## SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR TRANSFER

Ivy-Dry has failed to carry its burden of proving that defendants Zanfel and the

Yarbrough Foundation are subject to personal jurisdiction in New Jersey.  Even if personal

jurisdiction were proper (it is not), the Court should transfer this action to Michigan under the

first-filed rule.

Ivy-Dry's errors of law and fact in support of its claims for specific and general jurisdiction are myriad. Ivy-Dry's assertion that either a single cease and desist letter sent into New Jersey or the Yarbrough Foundation's license agreements with Zanfel somehow confers specific jurisdiction here conflicts with binding Federal Circuit authority. See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356 (Fed. Cir. 2006). Ivy-Dry fares no better on general jurisdiction. The uncontradicted evidence demonstrates that the Yarbrough Foundation (a charity that supports unwed mothers and orphans) has no contacts whatsoever with New Jersey and that Zanfel's direct sales into New Jersey comprise less than 0.25% of its total sales for the period from January 1, 2006 to present. Ivy-Dry commits gross factual error when it asserts that Zanfel sold an additional $72,389.40 to $130,300.92 worth of product into New Jersey. In addition, Zanfel's 2% of indirect sales into New Jersey are nominal. Finally, this Court should reject Ivy-Dry's unsupported legal theory that the Zanfel website is commercially interactive based on some form of "apparent agency" with third party DERMAdoctor.com. The Zanfel website is decidedly more passive than active.

Alternatively, the first-filed rule mandates transfer to the Western District of Michigan, where a prior filed action by Zanfel involving the same false marking issue before this Court has been pending since August 8, 2008. Unlike the situation here, however, that action is not subject to dismissal or transfer in its entirety, as named defendant Rite Aid Corporation does not contest jurisdiction. A transfer of this action, therefore, will promote judicial economy and avoid the waste of time, energy and money associated with trying the same issues in two districts.

**ARGUMENT**

I.    PERSONAL JURISDICTION IS LACKING

The Court should dismiss this action because personal jurisdiction is lacking. Neither

Zanfel nor the Yarbrough Foundation is subject to specific jurisdiction in New Jersey because the acts that form the basis of this action, *i.e.*, Ivy-Dry's false marking, did not occur in New Jersey.  General jurisdiction is lacking because Zanfel and the Yarbrough Foundation do not maintain sufficient contacts with this forum.  With respect to the Yarbrough Foundation, a private charitable foundation with no ties to New Jersey, Ivy-Dry has failed completely to carry its burden of proof on personal jurisdiction. With respect to Zanfel, its direct and indirect sales are *deminimis* and its website does not enable New Jersey residents to conduct business with or buy product directly from Zanfel.

     A.    <u>Specific Jurisdiction</u>

In a misguided effort to satisfy its burden of proof on specific jurisdiction, Ivy-Dry baldly advances legal theories without support and mischaracterizes binding Federal Circuit precedent.

First, at page 22 of its Opposition, Ivy-Dry posits that cease and desist letters to Ivy-Dry customers sent by Zanfel and the Yarbrough Foundation into New Jersey support specific jurisdiction.[1]  Ivy-Dry cites no legal authority for this assertion and there is none.  In fact, Federal Circuit precedent is directly to the contrary.  <u>See</u> <u>Breckenridge Pharm., Inc. v.</u> <u>Metabolite Labs., Inc.</u>, 444 F.3d 1356, 1363 (Fed. Cir. 2006) ("personal jurisdiction may not be exercised constitutionally when the defendant's contact with the forum state is limited to cease and desist letters, 'without more.'")

Second, Ivy-Dry mischaracterizes the Federal Circuit's holding in <u>Breckenridge</u>, 444 F.3d at 1366 by suggesting that this Court may maintain specific jurisdiction over the Yarbrough Foundation merely because it licensed its patents and trademarks to Zanfel.  (Doc. No. 36 at 22.)

---

[1] Although Ivy-Dry refers to these cease and desist letters in plural, only a single letter was sent into New Jersey.  (Exhibit A; Yarbrough Decl. ¶ 5.) This makes sense, as Zanfel has worked directly with one New Jersey customer.

Ivy-Dry, as it must, ignores an explicit pronouncement in Breckenridge that this type of tag-along jurisdiction only attaches where the patent(s) that are the subject of the license between the two parties also form the basis of the lawsuit:

> In sum, our case law has held as follows: where a defendant has sent cease and desist letters into a forum state that primarily involve a legal dispute unrelated to the patent at issue, such as an injunction obtained for misappropriation of trade secrets, the exercise of personal jurisdiction is improper.

Breckenridge, 444 F.3d at 1366.

Here, the patents and trademarks licensed to Zanfel by the Yarbrough Foundation are completely unrelated to this action. Instead, the action is based upon Ivy-Dry's false marking of its products with patents licensed from Columbia University and a company called VSP Technologies. (Doc. No. 36 at 2.)

      B.    <u>General Jurisdiction</u>

Recognizing its problems with specific jurisdiction, Ivy-Dry moves next to general jurisdiction. Here, there can be no dispute that Ivy-Dry failed to adduce sufficient evidence to support "a *prima facie* case" for general jurisdiction over the Yarbrough Foundation. <u>See Malaysia Int'l. Shipping Corp. v. Sinochem Int'l. Co. Ltd.</u> 436 F.3d 349, 364 (3d Cir. 2006). Ivy-Dry also misunderstands (or misrepresents) the sales activities of Zanfel and the extent of its limited interactions with New Jersey. General jurisdiction over both entities is improper.

There is really little question that Ivy-Dry has failed to satisfy its burden of proving general jurisdiction over the Yarbrough Foundation. The Yarbrough Foundation has no contacts with the state of New Jersey, and Ivy-Dry has failed to submit *any* evidence on this critical point. Ivy-Dry does not even bother to advance a theory for the exercise of general jurisdiction over the Yarbrough Foundation.

Zanfel simply does not maintain "continuous and systematic contacts" with the State of

New Jersey.  Both its direct and indirect sales are *deminimis*.  And its website is not sufficiently interactive or commercial to justify haling Zanfel into this forum.

From January 1, 2006, to present, Zanfel made a total of approximately $25,000 worth of direct sales into New Jersey, representing less than 0.25% of Zanfel's total sales, specifically between about 0.13% and about 0.20% over the period.  (Exhibit A; Yarbrough Decl. ¶ 14.) Zanfel's last direct sale into New Jersey occurred on June 18, 2008, as its sole customer, Drug Fair Group, Inc., recently filed for bankruptcy.   (Id. at ¶¶ 6, 7.)  Zanfel's indirect sales are equally trivial, representing about 2% of Zanfel's total sales.

This evidence stands uncontradicted.  Importantly, Ivy-Dry's assertion that Zanfel sold "at the very least approximately $72,389.40 to $130,300.92" directly to New Jersey residents is a factual error predicated on Ivy-Dry's failure to depose Zanfel.  (Doc. No. 36 at 19, citing ZANFEL000545-566.)  The documents cited by Ivy-Dry in support of its assertion merely represent requests by New Jersey physicians and pharmacists for information concerning Zanfel and its poison ivy educational material. (Exhibit A; Yarbrough Decl. ¶ 10-12.)  The documents evidence no direct purchases of Zanfel product by New Jersey residents and Zanfel offers no mechanism allowing such purchases.  (Id. at ¶ 12.)  Had Ivy-Dry deposed Zanfel, it would not have bothered with this argument.[2]

Recognizing the *deminimis* nature of Zanfel's sales into and relationships with New Jersey, Ivy-Dry concludes its discussion of general jurisdiction by focusing on Zanfel's website. The thrust of Ivy-Dry's argument is that Zanfel's website allows New Jersey residents to buy Zanfel product online through DERMAdoctor.com.  This fact, however, is of no moment given

_____

[2] Ivy-Dry's failure to depose Zanfel caused additional factual errors. (Exhibit A; Yarbrough Decl. ¶ 1-16.)  Mr. Yarbrough is a minority shareholder in Zanfel, with only 30% of its outstanding stock. (Exhibit A; Yarbrough Decl. ¶ 1-4.) He does not own 98% of the company as Ivy-Dry asserts.

Ivy-Dry's admission that "the website that actually sells Zanfel products [DERMAdoctor.com] does not appear to be controlled by Defendants." (Doc. No. 36 at 20.) Put another way, Zanfel's website lies at the passive end of the spectrum, as customers located in New Jersey cannot conduct business directly with Zanfel online. See VP Intellectual Props., LLC v. Imtec Corp., No. 99-3136, 1999 U.S. Dist. LEXIS 19700 at *8-10 (D.N.J. Dec. 8, 1999).

Ivy-Dry seeks to remedy this defect in its argument by characterizing DERMAdoctor as Zanfel's "apparent agent." (Doc. No. 36 at pp. 20-21.) Ivy-Dry does not say why or how DERMAdoctor is Zanfel's apparent agent. And even if it were, Ivy-Dry offers no legal authority that would support exercising general jurisdiction over a nonresident defendant on a theory of apparent agency. Further, Zanfel does not consider DERMAdoctor its agent, as it maintains no contracts with DERMAdoctor and receives no proceeds from DERMAdoctor for online sales of Zanfel product. (Exhibit A; Yarbrough Decl. ¶ 8, 9.)

## II.   THE FIRST-FILED RULE

If the Court does not deem dismissal appropriate, then the parties agree that the first-filed rule governs the ultimate destination of this action. Under Third Circuit precedent, the first-filed action is the action filed by Zanfel in Michigan on August 8, 2008 (the "Michigan Action"), as this prior action occurred chronologically first in time and involved substantially similar issues and parties. See Nature's Benefit, Inc., v. NFI, 2007 U.S. Dist. LEXIS 62871, at *7,8 (D.N.J. Aug. 27, 2007) ("neither identical parties nor identical issued are needed, only a substantial overlap") (citing EEOC v. Univ. of Pennsylvania, 850 F.2d 969, 971 (3d Cir.1988)).

Further, maintaining the instant action in New Jersey would result in judicial inefficiency and potentially inconsistent results. See Nature's Benefit, 2007 U.S. Dist. LEXIS 62871 at *8 (the first filed rule encourages "sound judicial administration and promotes comity among

federal courts of equal rank").  In particular, the Michigan Action is not subject to dismissal or transfer in its entirety, as named defendant Rite Aid Corporation has answered Zanfel's originally filed Complaint and its First Amended Complaint.  Thus, Rite Aid's presence in Michigan precludes consolidation of the two separate actions in New Jersey.

A.    Michigan is First Filed.

The Michigan Action is filed first chronologically and there exists substantial overlap between the issues and parties in that action and this action:

| Filing Date | Parties | Court | Issues |
|---|---|---|---|
| August 8, 2008 (Exhibit B) | Zanfel Laboratories, Inc. v. Rite Aid Corp. | W.D. Mich. | False marking of products manufactured and advertised by Ivy-Dry and sold and advertised by Rite Aid |
| October 6, 2008 (Exhibit C) | Ivy-Dry, Inc. v. Zanfel Laboratories, Inc. and The William M. Yarbrough Foundation | N.J. | Declaratory judgment of no false marking of products manufactured and advertised by Ivy-Dry, with pendent state law claims against Zanfel and Yarbrough relating to the same issue |
| December 22, 2008 (Exhibit D) | Zanfel Laboratories, Inc. and The William M. Yarbrough Foundation v. Rite Aid Corp. and Ivy-Dry, Inc. | W.D. Mich. | False marking and false advertising of products manufactured and advertised by Ivy-Dry and sold and advertised by Rite Aid |

The central issue in the Michigan Action, from which all issues in the later filed actions flow, is whether certain patents licensed to Ivy-Dry cover the products on which they are marked.  There are also overlapping parties.  Ivy-Dry does not dispute these critical facts.

Further, the factors under 28 U.S.C. §1404(a) also favor transfer to Michigan.  Counsel for Zanfel, the Yarbrough Foundation and Rite Aid all reside in West Michigan.  Similarly, major categories of relevant documents, including Zanfel's corporate documents, reside in West Michigan. (Exhibit A; Yarbrough Decl. ¶ 15.)  In addition, Zanfel's primary research and

development facilities and one of its chief scientists are located in West Michigan, both of which will be relied upon to advance critical aspects of the chemistry underlying the false marking claim. (Exhibit A; Yarbrough Decl. ¶ 16.)

Finally, the case law relied upon by Ivy-Dry actually supports Zanfel.  In the only Third Circuit case cited by Ivy-Dry – Nature's Benefit, 2007 U.S. Dist. 62871 at *23 – this Court invoked the first filed rule to transfer an earlier filed action out of New Jersey to North Carolina. Moreover, the case law cited by Ivy-Dry from outside this Circuit stands for the unremarkable proposition that a chronologically first filed action is judged by the date of the original rather than the amended complaint.  See Plating Res., Inc. v. UTI Corp., 47 F. Supp. 2d 899 (N.D. Ohio 1999); Ward v. Follett Corp., 158 F.R.D. 645 (N.D. Cal. 1994).  Assuming this law applies, the Michigan Action, is first filed, occurring nearly two months before Ivy-Dry's New Jersey action.

B.      Maintaining this Action Offends Judicial Economy and Consistency.

Judicial and financial economy, which are the underpinnings of the first-filed rule, are best served by transferring this Action to Michigan.  Indeed, denying Zanfel's motion to dismiss or transfer will necessitate multi-district litigation because Rite-Aid is subject to and has not contested jurisdiction in Michigan.  Under these circumstances, two separate courts would be forced to decide the same issue, namely: whether multiple patents cover multiple products on which they are marked.  Concerns over judicial economy and the possibility of conflicting rulings alone justify dismissal or transfer.  Ivy-Dry failed to address these important points in its briefing and failed to offer a procedural mechanism for avoiding this undesirable result.

In contrast, nothing prevents this action from being transferred and consolidated with the Michigan Action.  Although Ivy-Dry contests jurisdiction in Michigan, it cannot seriously argue that specific jurisdiction in Michigan is absent given that the Ivy-Dry products accused of false

marking are advertised and sold throughout Michigan in various major drug store chains, including Rite Aid.

<u>**CONCLUSION**</u>

For the reasons set forth in Defendants' Opening Memorandum, as well as their Reply Memorandum in Support of Defendants' Motion To Dismiss or Transfer, Defendants respectfully request that the Court enter an Order granting their motion and dismissing this case or, in the alternative, transferring this case to the Western District of Michigan and awarding Defendants such other and further relief as the Court deem just and proper.

April 23, 2009                                    /s/ Gail L. Gottehrer_____

Gail L. Gottehrer (GG-5187)
Jonathan A. Harris (*pro hac vice*)
Thomas K. Hedemann (*pro hac vice*)
**Axinn Veltrop & Harkrider LLP**
90 State House Square
Hartford, CT 06103-3702
Telephone: (860) 275-8100
Facsimile: (860) 275-8101

William L. King III
**King & Partners, PLC**
170 College Avenue, Suite 230
Holland, Michigan 49423
Telephone: (616) 355-0400
Facsimile: (616) 355-9862

*Attorneys for Defendants*