NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IVY-DRY, INC. : | | |
| : | | |
| Plaintiff, : | **OPINION** | |
| : | | |
| v. : | Civil Action No. 08-4942 (WHW) | |
| : | | |
| ZANFEL LABORATORIES, INC., an : | | |
| Illinois Corporation, and THE WILLIAM M. : | | |
| YARBROUGH FOUNDATION, an Illinois : | | |
| not-for-profit corporation, SAN-MAR : | | |
| LABORATORIES, INC., a New York : | | |
| corporation, and VSP TECHNOLOGIES, : | | |
| INC., a New York corporation | | |
| Defendants. | | |

**Walls, Senior District Judge**

Defendant moves to dismiss or transfer this matter pursuant to the first-filed rule. Plaintiff makes a cross-motion to compel jurisdictional discovery. Pursuant to Rule 78 the motions are decided without oral argument.

**FACTS AND PROCEDURAL BACKGROUND**

Plaintiff Ivy-Dry supplies over-the-counter medication to treat poison ivy, poison sumac and poison oak. (See Compl. ¶ 8.) Ivy-Dry's products fall within the scope of United States Patent No. 5,708,023 ("'023 Patent") but have also been marked with United States Patent No. 5,965,610 ("'610 Patent"), United States Patent No. 5,985,918 ("'918 Patent") and United States Patent No. 6,037,386 ("'386 Patent"). (See id.) These patents are owned by The Trustees of Columbia University, who have licensed the patents to defendant VSP Technologies with the right to sub-license the patents to others. (See Compl. ¶ 9.) VSP granted Ivy-Dry an exclusive

NOT FOR PUBLICATION

sub-license of the '023 and other patents to treat poison ivy, poison oak and poison sumac. (See Compl. ¶ 9.) Ivy-Dry's products are manufactured by defendant San-Mar Laboratories, Inc. ("San-Mar"). (See Compl. ¶ 11.) San-Mar and VSP advise Ivy-Dray as to which patents apply to Ivy-Dry's products. (See id.) According to plaintiff, San-Mar and VSP agreed to indemnify plaintiff for any incorrect patent marking. (See First Am. Compl. ¶ 22.)

In early 1997, William Yarbrough was a sales representative for a speciality manufacturer of hand cleaners. (See Decl. of William M. Yarbrough in Supp. of Defs.' Mot. to Dismiss or Transfer ("Yarbrough Decl.") ¶ 3.) When Yarbrough contracted an acute case of poison ivy on his face and neck, (See Yarbrough Decl. ¶ 4.), he attempted to treat it by washing the affected area with the hand cleaner and his symptoms abated. (See Yarbrough Decl. ¶ 5.) After further testing, Yarbrough obtained a patent and formed defendant Zanfel Laboratories, which now sells a product called Zanfel Poison Ivy Wash. (See Yarbrough Decl. ¶ 6.) According to Mr. Yarbrough, a substantial portion of Zanfel's profits are used to fund defendant William M. Yarbrough Foundation, a charitable foundation which is "dedicated to helping the homeless, pregnant mothers, and women in transition - among others." (Yarbrough Decl. ¶ 7.)

Zanfel Poison Ivy Wash competes with several other products purporting to treat poison ivy, oak and sumac, including products manufactured by plaintiff Ivy-Dry. (See Yarbrough Decl. ¶ 8.) Yarbrough claims that he discovered that these Ivy-Dry products bore incorrect patent numbers and as a result "were unfairly harming the competitive standing of Zanfel Poison Ivy Wash." (Yarbrough Decl. ¶ 10.) Defendants then "sent letters to a limited number of retailers of Ivy-Dry products informing them that their actions constituted false marking and requesting that

NOT FOR PUBLICATION

they cease and desist all advertising and sales of the falsely marked products." (Id.) One of the retailers which received this letter was Rite Aid. Rite Aid forwarded the letter to Ivy-Dry, (See Compl. ¶ 14.), but did not stop marketing the Ivy-Dry products. (See Yarbrough Decl. ¶ 11.)

On August 8, 2008, Zanfel filed an action against Rite Aid in the Western District of Michigan, alleging violations of the Lanham Act, which prohibits marking products with, or advertising products marked with, an incorrect patent number with the intent of deceiving the public. (See Defs.' Supp., Ex. A; Zanfel Laboratories v. Ride Aid Corporation, Civil Action No. 1:08-cv-749 (W.D. Mich., filed Aug. 8, 2008) ("Michigan Action").) See 35 U.S.C. § 292(a). Zanfel alleged that Rite Aid had sold and advertised for sale several Ivy-Dry products that were marked with inapplicable patents. (See Michigan Action, Compl. ¶ 22.) Zanfel did not initially join Ivy-Dry as a defendant, nor did Zanfel join the Yarbrough Foundation as a plaintiff.

On October 6, 2008, Ivy-Dry filed a complaint[1] in this Court alleging that defendants have "without basis, widely spread in interstate commerce allegations that Ivy-Dry's Poison Ivy Medications are falsely marked with the '023 patent and other patents and that such patent marking violates the 'patent false marking' provision of the Patent Laws, 35 U.S.C. § 292." (Compl. ¶ 13.)

Ivy-Dry asserts counts of unfair competition and trade disparagement under the Lanham Act, (See Compl. ¶ 29-34.), common law trade and product disparagement, (See id. ¶ 35-42.),

---

[1]On June 19, 2009 plaintiff filed a First Amended Complaint, presumably pursuant to Fed. R. Civ. P. 15, joining VSP and San-Mar as defendants and asserting a number of counts arising from an alleged failure by VSP and San-Mar to deliver accurate patent marking information to Ivy-Dry. Because the claims asserted against VSP and San-Mar arise from the same subject matter as plaintiff's original Complaint, the Court's reasoning is not affected.

NOT FOR PUBLICATION

tortious interference, (See id. ¶ 43-47.), defamation, (See id. ¶ 48-52.) and unfair competition (See id. ¶ 53-57.), seeking a declaratory judgment that defendants have violated the Lanham Act and an order enjoining defendants from further contacting Ivy-Dry's customers.  (See Compl. ¶ 59-64.)

Ivy-Dry alleges that defendants sent a form letter, substantially similar to the letter sent to Rite Aid, (See Compl., Ex. A.), to a "significant number" of Ivy-Dry customers around the United States, (See Compl. ¶ 14.), which (i) threatened Ivy-Dry's customers with violations of the Lanham Act and further legal action, (See Compl. ¶ 15.); (ii) insisted that Ivy-Dry's customers "'immediately' remove Ivy-Dry's Poison Ivy Medication marked with the '023 patent and other patents from their shelves, (See Compl. ¶ 16.); and (iii) demanded that Ivy-Dry's customers cease and desist advertising, offering for sale and selling Ivy-Dry products.[2] (See Compl. ¶ 17.)

Plaintiff claims these threats were wrongful because defendants lacked the required basis to assert a Lanham Act violation.  (See Compl. ¶¶ 19-20.)  According to plaintiff, defendants made no showing Ivy-Dry marked in bad faith and "for the purpose of deceiving the public;" produced no scientific or other data showing that Ivy-Dry's products did not fall within the scope of the patents; and had no evidence that Ivy-Dry's customers used the patents at issue in their

---

[2]In their opposition, plaintiff asserts that counsel for defendants also threatened criminal violations.  (See Pl.'s Opp'n 5.)  Although an email attached as an exhibit to plaintiff's opposition does reference such a threat, plaintiff does not allege this fact in their complaint and the Court does not consider it in deciding this motion. (See Pl.'s Opp'n, Ex. H, Email from Mitch/Medichest.com to Harry Reicherz, dated July 7, 2008.)

**NOT FOR PUBLICATION**

advertising. For their part, plaintiffs insist they marked all of its patents in good faith and "never with any intent to deceive the public." (Compl. ¶ 25.)

On December 22, 2008, the Western District of Michigan granted Zanfel's motion to amend its complaint in the Michigan action, joining Ivy-Dry as a defendant and the Yarbrough Foundation as a plaintiff. (See Michigan Action, Amended Compl. (Dkt. Entry No. 22, filed December 22, 2008).)

Defendants now move to dismiss or transfer plaintiff's complaint pursuant to the first-filed rule or, alternatively, to dismiss the complaint for lack of personal jurisdiction. Plaintiffs oppose such motion and move to compel discovery as to the jurisdictional issues. The Court does not address plaintiff's motion to compel because plaintiff's complaint should be transferred to the Western District of Michigan pursuant to the first-filed rule.

**LEGAL STANDARD**

The first-filed rule is a rule of comity which requires that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." EEOC v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988) (quoting Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)); see also Siemens Financial Services, Inc. v. Open Advantage M.R.I. II L.P., 2008 U.S. Dist. LEXIS 15623, *10 (D.N.J. Feb. 29, 2008).

The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." EEOC., 850 F.2d at 971. Application of the rule, however, is addressed to the court's discretion. Courts have the power to enjoin later prosecution of proceedings involving the same parties and issues but that power does not direct "wooden application of the

**NOT FOR PUBLICATION**

rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." Id. at 972. Circumstances where a court should retain jurisdiction include where the plaintiff in first-filed action engaged in bad faith or forum shopping, when the second-filed action is more fully developed or when the first-filing party "instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum." Id. at 977. However, "[c]ourts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule." Id. at 979.

In addition to the first-filed rule, on a motion to transfer or dismiss, a court must take into account the same factors as those used in a motion to transfer pursuant to 28 U.S.C. § 1404(a). See Nature's Benefit Inc. v. NFI, 2007 U.S. Dist. LEXIS 62871, *8-9 (D.N.J. 2007, Aug. 27, 2007) Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The Third Circuit has published several additional factors that district courts should consider when deciding whether to transfer an action.

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (internal citations omitted).

> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest

NOT FOR PUBLICATION

>in deciding local controversies at home;  the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (internal citations omitted).

**DISCUSSION**

According to defendants, the central issue in this case is exactly the same as that in the Michigan Action: whether the Ivy-Dry products are covered by the patents with which they are marked.  (See Defs.' Supp. 15.)  Defendants note that neither identical parties or identical issues are needed, only a substantial overlap.  (Defs.' Supp. 14.)  As example, defendants point to two Third Circuit district court cases applying the rule.  First, in Siemens Fin. Servs. v. Open Advantage M.R. I. II L.P., Judge Hayden affirmed Magistrate Judge Schwartz's application of first-filed rule because the subject matter of the second-filed suit was the same even though the parties were not.  See No. 07-1229, 2008 U.S. Dist. LEXIS 15623, at *10 (D.N.J. Feb. 29, 2008). Second, the District of Delaware concluded in two cases that the first-filed rule was concerned with whether first case filed related to a particular subject matter not whether the first case involved the same parties.  See Time Warner Cable, Inc. v. GPNE Corp., 497 F. Supp. 2d 584 (D. Del. 2007); Schering Corp. v. Amgen Inc., 969 F. Supp. 258, 267 (D. Del. 1997).

Even if the first-filed rule requires that the parties be identical, defendants argue that the current parties to the Michigan Action are the same because plaintiffs here, defendants there, have now been joined and, in any event, Rite Aid, which was originally named as a defendant, and Ivy-Dry are effectively the same in that they share the same interests and are represented by the same counsel. (See Defs.' Supp. 16.)

**NOT FOR PUBLICATION**

     Plaintiff responds that, because Ivy-Dry was not party to the Michigan Action until after Ivy-Dry filed suit in this case, the present matter is actually the first-filed action.  (See Pl.'s Opp'n 26.)  Plaintiff adds that the plaintiff's preference of forum is paramount and insists that the Section 1404 factors do not favor transfer.  (Pl.'s Opp'n 27-28.)  Plaintiff claims the only reason that case is in Michigan is that patent counsel is there, that Michigan has no interest in the matter because both Zanfel and Yarbrough are Illinois corporations with no offices or employees in Michgan and that Ivy-Dry would be burdened by litigation in Michigan.  (See Pl.'s Opp'n 28.)  Notably, plaintiff does not expressly claim that defendants were forum shopping in choosing to bring suit in Michigan[3] just that Michigan is less convenient.

     There is no question that the Michigan Action was filed first.  Although plaintiff points to two cases from district courts in other jurisdictions for the proposition that "[f]or purposes of establishing the chronology, courts should focus on the date 'a party filed its original, rather than its amended complaint,'" (Pl.'s Opp'n 26 (quoting Plating Ress., Inc. v. UTI Corp., 47 F. Supp. 2d 899, 904 (N.D. Ohio 1999) (quoting Ward v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994)).), these cases do not help plaintiff's cause.  Both stand only for the proposition that the date for purposes of the first-filed rule is when the case is filed, not when any amended complaint is filed.  See Plating Res., 47 F. Supp. 2d at 904; Follett Corp., 158 F.R.D. at 648.

     There is also no question that the Michigan Action is substantially related to the present complaint.  In order to succeed on its state law tort claims, Ivy-Dry must demonstrate that the

---

    [3]Plaintiff does suggest that the decision to not join Ivy-Dry in the original suit was "strategic," (Pl.'s Opp'n 26.), but does not claim that the decision to file in Michigan was strategic.

-8-

NOT FOR PUBLICATION

cease and desist letters were "objectively baseless" and that "no reasonable litigant could realistically expect success on the merits." Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1376 (Fed. Cir. 2004). If the patents were in fact improperly marked the cease and desist letter could not be "objectively baseless" and plaintiff could not prove a necessary element of its tort claims. In the Michigan Action, Zanfel seeks a declaratory judgment that Ivy-Dry's products were improperly marked. So any judgment for Zanfel in Michigan would conflict with a judgment for Ivy-Dry in New Jersey and vice versa. In sum, the present complaint and the Michigan Action concern precisely the same subject matter.

Plaintiff makes no arguments to the contrary, choosing to focus on the identity of the parties. Although there is no clear pronouncement from the Circuit that the proper focus is on overlapping subject matter, a plain reading of the Third Circuit's opinion in EEOC strongly suggests that whether the cases share subject matter is more important than the absolute identity of the parties. See EEOC, 850 F.2d at 971 ("the court which first has possession of the *subject* must decide it."). The District of Delaware has observed that the The Third Circuit "does not specifically require the exact identity of the parties," Time Warner Cable, Inc. v. GPNE Corp., 497 F. Supp. 2d 584, 589 (D. Del. 2007) (citing EEOC., 850 F.2d at 971), and other district courts in the Third Circuit have determined that the rule is concerned with which party first takes control of a subject, not whether the parties to the first-filed suit are identical to the suit for which transfer or dismissal is sought. GPNE, 497 F. Supp. 2d at 589 n.45 (citing Advanta Corp. v. Visa U.S.A., Inc., 1997 U.S. Dist. LEXIS 2007, 1997 WL 88906, at *3 (E.D. Pa. Feb. 19, 1997) (A party "cannot avoid application of the first-filed rule simply by asserting that it was not initially a party to the earlier filed action.")); see also Schering Corp. v. Amgen

NOT FOR PUBLICATION

Inc., 969 F. Supp. 258, 267 (D.Del. 1997) (the rule focuses "on which court first obtains possession of the *subject* of the dispute.").

The Court is further persuaded that the proper focus is on subject matter not parties by the analysis of the District of Delaware in Adavanta that if the first-filed rule failed to focus on the overlap of the subject matter it might encourage rather than discourage duplicative suits because parties who are aware of pending suits but not yet party to them might seek to file suit in more favorable fora. See Adavanta, 1997 U.S. Dist. LEXIS 2007, *5.

The Court must also consider whether transfer is appropriate under Section 1404 and is satisfied that Section 1404 does not preclude transfer. First, because the subject matter of the respective cases is the same, the interests each plaintiff holds in the forum of its choice, see Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970) (observing that the plaintiff has an interest in the forum of its choice), does not tip the balance. To credit one plaintiff's interest in its chosen forum is to discredit the same interest of the other plaintiff. Second, with regard to the public's interest in the forum for this matter, there is no significant advantage for Michigan or New Jersey. Although Ivy-Dry's witnesses and documents are located in New Jersey, defendants' documents are located in Michigan, as are counsel for both defendants and Rite Aid. (See Defs.' Reply 7-9.) Third, there is no question as to jurisdiction over Rite Aid in Western Michigan because Rite Aid answered Zanfel's complaint in the Michigan Action. (See Michigan Action, Answer (Dkt. Entry No. 7, filed Sept. 19, 2008).) Finally, the purposes of the first-filed rule bolster the public interest in transfer. Specifically in the area of patents, the Federal Circuit has observed that the first-to-file rule "raises the issue of national uniformity in patent cases, and invokes the special obligation of the Federal Circuit to avoid creating opportunities for

NOT FOR PUBLICATION

dispositive differences among the regional circuits." Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993). To conclude that Section 1404 precluded transfer of this matter would provide just that opportunity.

Exceptions to the first-filed rule are rare, see EEOC., supra 850 F.2d at 976, and plaintiff has not demonstrated that any of these exceptions apply here. Plaintiff has not asserted that defendants engaged in forum shopping or filed its suit in bad faith. If anything, the record suggests that Ivy-Dry may have been shopping for a more favorable forum. At the time Ivy-Dry filed in this Court, it had knowledge of the Michigan action. Counsel to Ivy-Dry here was already representing Rite Aid there. Rather than file a counter-claim in Michigan, Ivy-Dry filed suit here. Potential forum shopping would tend to support transfer to Michigan even if the present action were first-filed. See, e.g. GPNE, 497 F. Supp.2d at 590. The Court need not consider nor determine this issue, however, because Ivy-Dry's complaint was not first-filed and should be transferred to the Western District of Michigan.

**CONCLUSION**

Because the Michigan Action was filed before the present complaint and none of the exceptions to the first-filed rule apply, this matter is transferred to the Western District of Michigan.

s/William H. Walls
United States Senior District Judge

-12-

**NOT FOR PUBLICATION**

**Appearances**

Christopher P. Dephillips
Porzio, Bromberg & Newman, Pc
100 Southgate Parkway
Po Box 1997
Morristown, NJ 07962-1997

Brooks R. Bruneau
Porzio Bromberg & Newman P.c.
29 Thanet Road
Suite 201
Princeton, NJ 08540-3661
    Attorneys for Plaintiff

Gail L. Gottehrer
Axinn, Veltrop & Harkrider Llp
90 State House Square
Hartford, CT 06103
    Attorney for Defendants